# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 5:09-CV-195 (HL) |
| **$14,066.00 IN UNITED STATES FUNDS,** | : | |
| Defendant Property, | : | |
| **ERIC RICH,** | : | |
| Claimant. | : | |

## ORDER

This case is before the Court on the Government's Motion for Summary Judgment (Doc. 30). Even though Claimant was notified about the filing of the Motion, he did not file a response. Upon consideration, the Court finds that the Motion should be granted.

## I.   FACTS[1]

On December 22, 2008, at approximately 9:46 a.m., Claimant was stopped for speeding by Officer Ernest Hasty of the Twiggs County Sheriff's Office. Claimant appeared nervous during the traffic stop. Officer Hasty identified the odor of burnt marijuana emanating from Claimant's vehicle, and utilized a drug dog to conduct a free air sweep of the vehicle. The drug dog gave a positive alert on both the driver

---

[1]As Claimant did not file a response to the Government's Statement of Material Facts, all of the facts contained in the Statement of Material Facts are deemed admitted. L. R. 56.

and passenger doors of the vehicle. Claimant advised that he did not have any weapons or a large amount of currency in the vehicle, but a search of the vehicle revealed a loaded Glock semi-automatic pistol and $9,820 wrapped in rubber bands and placed in a clear plastic bag. The currency was located under the carpet in the trunk of the vehicle. A search of Claimant's person also revealed a large amount of currency, later determined to be $4,246.

Claimant was arrested for speeding in excess of maximum limits, possession of a firearm by a convicted felon, and theft by receiving stolen property. The currency in Claimant's possession, a total of $14,066 (the "Defendant Property"), was seized. The Defendant Property was adopted by the Drug Enforcement Administration for administrative forfeiture. The DEA published and mailed out notices of forfeiture, which provided information about how claims or petitions for remission could be filed. Claimant filed a Notice of Claim and Petition for Remission with the DEA, which was referred to the United States Attorney's Office for the Middle District of Georgia. In the Notice of Claim and Petition for Remission, which was signed under penalty of perjury, Claimant stated that the seized currency was proceeds from an auto insurance claim. In support of the Notice of Claim and Petition for Remission, Claimant submitted a banking statement dated June 25, 2007, a banking statement dated December 23, 2008, and a copy of a check, dated June 10, 2007, from Southern General Insurance Company, made payable to Claimant, in the amount of $18,352.

On June 8, 2009, the Complaint for Forfeiture currently pending before the Court was filed. On July 15, 2009, Claimant filed a Claim and an Answer to the Complaint for Forfeiture, and asserted his interest in the Defendant Property. Claimant maintained his assertion that the currency was from an auto insurance check.

Counsel for the Government first attempted to depose Claimant on August 3, 2010. Claimant refused to answer any questions about the Defendant Property, and instead invoked his Fifth Amendment right against self-incrimination. The Government moved to compel Claimant's deposition testimony, and the Court entered an order in which it instructed Claimant that if he refused to give his deposition, his claim to the Defendant Property would be dismissed.

Claimant did eventually give his deposition on August 27, 2010. During that deposition, Claimant testified that the Defendant Property came from an auto insurance check in the amount of $18,352, from the sale of his share of a children's clothing store in the amount of $5,000, and a life insurance check from the death of his father in the amount of $15,000. Claimant stated that he deposited the life insurance check into his Wachovia bank account in 2006. Claimant has not produced any records concerning the life insurance proceeds. He also stated that he sold his share of the children's clothing store in the Spring of 2007 and deposited that money into his Wachovia bank account as well. Claimant has not, however, provided the Court with any records pertaining to the sale of his share of the clothing

store. The auto insurance check in the amount of $18,352 was deposited into the Wachovia account on June 20, 2007. Claimant testified that he gave $10,000 of the proceeds from the auto insurance check to his wife, and kept $8,352 of the funds in the Wachovia account.

Claimant, who has a prior criminal history for narcotics violations, testified that he was unemployed from 2007 through 2008. During that time he withdrew money from the Wachovia account to pay bills and expenses.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue to any material facts and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The Court may not, however, make credibility determinations or weigh the evidence. Id. at 255.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the

4

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law. Id. at 324-26. If the evidence that the nonmovant presents, however, is "not significantly probative" or is "merely colorable," then summary judgment may be granted. Anderson, 477 U.S. at 249, 106 S.Ct. at 2511. This evidence must consist of more than mere conclusory allegations. See Avrigan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.

### III. ANALYSIS

The Government seeks a grant of summary judgment ordering the forfeiture of the Defendant Property to the United States. The Government contends that the Defendant Property is subject to forfeiture because it constitutes money furnished or intended to be furnished in exchange for a controlled substance, or because it constitutes proceeds traceable to such an exchange.

5

The Controlled Substances Act provides for the civil forfeiture of money "furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter." 21 U.S.C. § 881(a)(6). The government must establish by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1). The court must consider the "totality of the circumstances" when determining whether the government has satisfied this standard. United States v. $121,100.00 in U.S. Currency, 999 F.2d 1503, 1507 (11th Cir. 1993). The government may use circumstantial evidence and evidence gathered after filing the complaint to meet its burden. United States v. $291,828.00 in U.S. Currency, 536 F.3d 1234, 1237 (11th Cir. 2008). The government is not required to produce evidence connecting the money to a particular drug transaction, but need only show that the money was "related to some illegal drug transaction." United States v. $242,484.00, 389 F.3d 1149, 1160 (11th Cir. 2004) (*en banc*). In evaluating the evidence, the Court must maintain "a common sense view to the realities of normal life." United States v. Carrell, 252 F.3d 1193, 1201 (11th Cir. 2001) (quotation and internal quotation marks omitted).

Once the Government has shown that the property is subject to forfeiture, "the burden of proof shifts to the claimant[ ] to show, by a preponderance of the evidence, that the property is not subject to forfeiture." United States v. Clecker, 270 F.3d

1331, 1334 (11th Cir. 2001). "The claimant may meet this burden either by rebutting the government's evidence or by showing that the claimant is an innocent owner." Id.

After considering all of the facts collectively, the Government has shown that it is entitled to forfeiture of the Defendant Property. First, the majority of the Defendant Property was wrapped in rubber bands and plastic, and was hidden in the trunk of Claimant's vehicle under the carpet. According to the DEA Special Agent investigating this case, wrapping currency in rubber bands and plastic is a common method of packaging used by drug traffickers to package their proceeds. Further, the concealment of money lends itself "to the inference that the money was drug related." United States v. $215,300 United States Currency, 882 F.3d 417, 418-19 (9th Cir. 1989).

Second, Claimant has prior drug convictions, which are highly probative in the forfeiture calculation. United States v. $67,220 in U.S. Currency, 957 F.2d 280, 286 (6th Cir. 1992). Third, there is a conflict in Claimant's testimony as to when and how the Defendant Property was obtained. In his Notice of Claim signed under oath on February 5, 2009, Claimant stated that he withdrew the Defendant Property from the bank "just prior to the seizure." During his deposition, however, Claimant stated that he had been withdrawing all of his money out of his bank account a little bit at a time until he had withdrawn all of the money. If Claimant had in fact withdrawn the money just prior to the seizure, one would expect the money to have been secured in bank

7

wrappers, not in rubber bands. Further, Claimant testified that he took all of his money out of the bank in hundred dollar bills and fifty dollar bills, but that is contradicted by the evidence, as the Defendant Property consists of the following denominations:

| Denomination | Number of Bills | Dollar Value by Denomination |
|---|---|---|
| $100 | 79 | $7,900 |
| $50 | 11 | $550 |
| $20 | 273 | $5,460 |
| $10 | 15 | $150 |
| $5 | 0 | $0 |
| $1 | 6 | $6 |

Fourth, a drug dog alerted to the smell of narcotics in Claimant's vehicle. The Eleventh Circuit has held that a drug dog's alert is a factor weighing in the Government's favor in a civil forfeiture case. $242,484.00, 389 F.3d at 1166.

Fifth, Claimant was admittedly unemployed during 2007 and 2008, and even assuming that Claimant received a $15,000 life insurance check in 2006, a $5,000 check for the sale of the clothing store in the Spring of 2007, and a $18,000 auto insurance check in June of 2007, it goes against all common sense to believe $14,000 of that money was still in Claimant's possession in December of 2008, especially as he gave $10,000 to his wife and was using those funds for two years

to pay his bills and support four children.[2] Claimant himself testified that the Defendant Property would probably only last him six or seven months.

Sixth, Claimant, who appeared nervous during the traffic stop, initially told Officer Hasty that he did not have large amounts of currency in the vehicle, but was then found to be in possession of over $14,000 in cash. Finally, the fact that Claimant initially refused to give any deposition testimony in this case, and instead invoked his Fifth Amendment right against self-incrimination and refused to answer any questions about the Defendant Property, also weighs in the Government's favor.

Since the Government has established that the Defendant Property is subject to forfeiture, the burden shifts to Claimant to show that the Defendant Property is not subject to forfeiture. Claimant may not rest on the mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). Claimant has not met his burden, as he has not set forth anything that raises an issue for trial. Accordingly, the Government's Motion for Summary Judgment must be granted.

## IV. CONCLUSION

The Motion for Summary Judgment (Doc. 30) is granted. The Defendant Property is forfeited to the Government.

---

[2] Claimant testified during his second deposition that he used the funds in question to pay his light, water, and cable bills, to pay for his children's school clothes, and to pay his monthly rent.

**SO ORDERED**, this the 22nd day of November, 2010.

                                              /s/ Hugh Lawson
                                              **HUGH LAWSON, SENIOR JUDGE**

mbh